AO 440 (Rev. 12/09) Summons in a Civil Action

# UNITED STATES DISTRICT COURT

for the

Southern District of New York

| | |
|---|---|
| Suzanne LaFont and Karl Anders Peltomaa | ) |
| _Plaintiff_ | ) |
| | ) **14 CV 4354** |
| v. | ) Civil Action No. |
| The City of New York, Former Commissioner of the New York City Police Department Raymond W. Kelly, | ) |
| | ) |
| _Defendant_ | ) |

## SUMMONS IN A CIVIL ACTION JUDGE HELLERSTEIN

To: _(Defendant's name and address)_  City of New York - 100 Church Street, New York, New York
PO Anthony Bruno - 120 West 82nd Street, New York, NY, 10024-5502
PO Anthony Giambra - 120 West 82nd Street, New York, NY, 10024-5502
Raymond Kelly - 1290 Avenue of the Americas, New York, NY 10104

A lawsuit has been filed against you.

Within 21 days after service of this summons on you (not counting the day you received it) — or 60 days if you are the United States or a United States agency, or an officer or employee of the United States described in Fed. R. Civ. P. 12 (a)(2) or (3) — you must serve on the plaintiff an answer to the attached complaint or a motion under Rule 12 of the Federal Rules of Civil Procedure. The answer or motion must be served on the plaintiff or plaintiff's attorney, whose name and address are:

If you fail to respond, judgment by default will be entered against you for the relief demanded in the complaint. You also must file your answer or motion with the court.

RUBY J. KRAJICK

CLERK OF COURT

Date: __JUN 1 7 2014__                                    _____
                                                          _Signature of Clerk or Deputy Clerk_

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X

Suzanne LaFont and Karl Anders Peltomaa,

**14 CV 4354**

**COMPLAINT**

Plaintiffs,

-against-

**JURY TRIAL
DEMANDED**

The City of New York, Former Commissioner of the
New York City Police Department Raymond W. Kelly,
Police Officer Anthony Giambra, Shield #5700,
Police Officer Anthony Bruno, Shield # 10914 and
Unidentified Officers of the New York City Police
Department,



Defendants.
------------------------------------------------------------------X

The Plaintiffs, complaining of the defendants, by their attorney, AMY MARION, ESQ.,

respectfully shows to this Court and alleges that they suffered abuse and sustained injury at the

hands of the above defendants.

1.      This Court has jurisdiction pursuant to 28 U.S.C. § 1331, over claims arising

under 42 U.S.C. § 1983.

2.      Supplemental jurisdiction over Plaintiffs' state law claims exists pursuant to 28

U.S.C. 1367(a).

3.      Venue is proper in the Southern District of New York under 28 U.S.C. § 1391(b),

because that is the judicial district in which the claims arose, and in which the defendants resided

or conducted business.

4.      Plaintiffs have complied with the requirements of New York General Municipal

Law Section 50-i by making and serving a notice of claim on the City of New York within the

time required by New York General Municipal Law Section 50-e. More than thirty days have

elapsed since the service of that notice.

1

5.      No request was made for Plaintiffs to submit to a hearing pursuant to New York General Municipal Law Section 50-h.

## JURY DEMAND

6.      Pursuant to the Seventh Amendment of the United States Constitution, Plaintiffs request a jury trial on all issues and claims set forth in this Complaint.

## PARTIES

7.      Defendant City of New York is a municipality that is a political subdivision of the State of New York, was the employer of defendants Raymond W. Kelly, Police Officer Anthony Giambra, Police Officer Anthony Bruno, and Unidentified Officers of the New York City Police Department and is at all times relevant to this complaint responsible for the policies, practices, and customs of the NYPD.

8.      Raymond W. Kelly at all times relevant to this complaint was the duly appointed and acting Commissioner of the NYPD, acting under color of law pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

9.      Police Officer Anthony Giambra at all times relevant to this complaint was duly appointed and acting as a police officer of the NYPD, acting under color of law pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

10.      Police Officer Anthony Bruno at all times relevant to this complaint was duly appointed and acting as a police officer of the NYPD, acting under color of law pursuant to the statutes, ordinances, regulations, policies, customs and usage of the City of New York and the State of New York.

2

11.     The City of New York is responsible for the NYPD's policies, practices and customs, as well as the hiring, screening, training, supervising, controlling and disciplining of its police officers and civilian employees.

## STATEMENT OF FACTS

12.     Plaintiff Suzanne LaFont is a 59 year old Anthropology professor who is 5' 8" tall, and weighs 125 pounds.  She is married to Plaintiff Karl Anders Peltomaa, a physicist, who is 5'9" tall and weighs approximately 143 pounds.

13.     Karl Peltomaa suffers from Marfan Syndrome[1] which is a congenital genetic syndrome which often results in heart malfunctions.

14.     The Plaintiffs lives with their dog at 30 West 83rd Street in Manhattan.

15.     On April 5, 2013, Karl Peltomaa had open-heart surgery to address a thoracic aortic aneurysm and to repair his heart valve.

16.     Eight years ago, Karl Peltomaa learned that he had a genetic condition related to Marfans.  His father died of an aortic aneurysm in 1994 and his sister died of an aortic aneurysm in 2004 (two weeks after giving birth to her second child).

17.     On March 13th, 2013, Karl Peltomaa learned that his aneurysm had grown to the point of needing surgery.

18.     On April 10, 2013, Karl Peltomaa was released from the hospital after having the needed surgery.

19.     He was prescribed several medications including Vicodin.

20.     On the evening of April 11, 2013, after walking their dog together, Karl had a half glass of wine and thereafter began feeling very anxious.

---

[1] http://www.mayoclinic.com/health/marfan-syndrome/DS00540

21.     Because Plaintiff Suzanne LaFont was concerned that Plaintiff Karl Peltomaa was experiencing a complication from the surgery, she immediately called 911.

22.     On the 911 tape, Suzanne LaFont can be heard expressing her worry that her husband was having a post-surgical reaction.

23.     Suzanne LaFont called twice, the first time, she hung up quickly when it seemed that Karl needed her help and then she immediately called right back.

24.     Suzanne LaFont informed the 911 operator that her husband does not have a psychiatric history, he just has a medical history and he had just undergone open heart surgery.

25.     The police, emergency service technicians, and firefighters arrived at the couple's apartment.

26.     Suzanne LaFont met them at the front door (they live on the first floor).

27.     Suzanne LaFont explained that Karl Peltomaa had just had open heart surgery and seemed to be having a post-surgical reaction.

28.     Suzanne LaFont spoke to Defendant Police Officer Giambra who is approximately 6' 2" and 220 pounds.

29.     At the door, the dog ran out of the apartment and the police stayed at the open door to the apartment while Suzanne LaFont ran down the hall to retrieve the dog.

30.     One of the responders grabbed the dog as he reached the sidewalk.

31.     Suzanne LaFont was gone only a few seconds to retrieve the dog, but when she got back into the hallway, a police officer had Karl Peltomaa pressed against the hallway wall, directly on his surgical wound on his chest.

32.     While one officer was pressing Karl's chest against the wall, two other officers, one being Defendant Anthony Bruno, were cuffing his hands behind his back.

4

33.     Suzanne LaFont repeated that Karl Peltomaa had just undergone open-heart surgery, and she told the police that they should not be pressing Karl against the wall because his incision was still very fragile.

34.     While trying to explain both the severity and fragility of Karl's condition as the officers were treating Karl in an extremely rough manner, Suzanne touched Defendant Giamba on his shoulder.

35.     Defendant Giamba, immediately turned to Suzanne and said, "You are under arrest."

36.     Suzanne LaFont did not do anything to warrant this arrest.

37.     She did not interfere in any way with Defendant Giamba's engagement, detention, and handcuffing of Karl.

38.     The Defendants and unidentified officers who had smashed Karl against the wall then threw him face down, on his chest wound, on to the floor thereby opening up a bloody gash in his chin and dislocating his thumb.

39.     The police also handcuffed Suzanne and led her into her apartment so that she could retrieve her identification.

40.     While she was in her apartment, cuffed and trying to assist the officer with finding her identification, she heard yelling in the hallway.

41.     A police officer was screaming at Karl and repeatedly using the F-word.

42.     Moments later, having taken her identification from her hand bag, an officer opened the door to the apartment and Suzanne saw Karl lying face down in the hallway in a pool of blood.

5

43.     When Suzanne cried that that they had broken open the incision in Karl's chest, the police officer remarked that it was not his chest that was bleeding.

44.     Suzanne was told that the blood was coming from Karl's chin which had been cut open when they slammed Karl onto the floor.

45.     Karl was still handcuffed behind his back, pulling on the fresh chest wound, when he was flipped over and dragged out of the building.

46.     Suzanne was taken to the 20th Precinct where, after a couple of hours, she started to develop a migraine headache (a condition which she has experienced intermittently in the past).

47.     She asked to be taken to the hospital – because she was told that was the only way she could obtain any medication. When she was removed from the cell at the precinct, she was again handcuffed and then shackled.

48.     The shackles were kept on Suzanne the entire time that she was at St Luke's Hospital (which was the same hospital to which Karl had been taken).

49.     Once Suzanne was taken to a bed, the cuffs were removed from behind her back and she was cuffed to the bed.

50.     She was treated at St Luke's for migraine (100 mg of Imitrex, 2 fiornal).

51.     One of the doctors came by and asked Suzanne if she was Karl Peltomaa's wife.

52.     Suzanne was asked some questions about Karl's medical condition and after a few hours she was taken to the 20th Precinct where she was detained for an additional 17 hours.

53.     Late in the afternoon of April 12, 2013, Suzanne was removed from the cell, handcuffed, and driven to Central Booking.

6

54.     Suzanne arrived at Central Booking at about 4:30 p.m. and was released after being arraigned at approximately 6:00 p.m.

55.     Nine months and eight court appearances after Plaintiff Suzanne LaFont's arrest, the case against her was dismissed "in the furtherance of justice."

56.     The Judge in his response to defense counsel's motion to dismiss noted that, "the police had mishandled a call to a medical emergency and ended up injuring an already sick man."

## DAMAGES

57.     Plaintiffs both incurred physical pain and injury, mental anguish, and emotional distress.

58.     Plaintiff LaFont suffers from anxiety, loss of sleep, panic attacks, and emotional injury as a result of the unlawful arrest.

59.     Plaintiff Peltomaa suffered extraordinary and unnecessary pain and fear of imminent death.

60.     Plaintiff LaFont was required to pay for her legal expenses for the criminal prosecution.

## FIRST CAUSE OF ACTION

## STATE LAW TORT FALSE IMPRISONMENT/FALSE ARREST

## AS TO PLAINTIFF LA FONT

61.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows.

62.     That the Plaintiff LaFont's right to be free from unreasonable search and seizure has been violated pursuant to Article 1 Section 12 of the New York New York State Constitution in that NYPD/NYC defendants caused the arrest of this Plaintiff.

63.     That the Plaintiff Lafont was conscious of the confinement, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

64.     That the said seizure and unlawful detention occurred without authority of the law and without any legal basis or probable cause to believe that Plaintiff LaFont was in fact guilty of crimes.

65.     That by reason of the unlawful seizure and false arrest, Plaintiff LaFont has been damaged as set forth above.

66.     That the defendant NYPD is liable for the acts of the individually named Defendants under the doctrine of *respondeat superior*.

67.     By reason of the foregoing, Plaintiff demands compensatory damages and punitive damages against all of the Defendants.

## SECOND CAUSE OF ACTION

### STATE LAW TORT FALSE IMPRISONMENT

### AS TO PLAINTIFF PELTOMAA

68.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows.

69.     That the Plaintiff Peltomaa's right to be free from unreasonable search and seizure has been violated pursuant to Article 1 Section 12 of the New York New York State Constitution in that the Defendants intended to confine Plaintiff and they did, in fact, confine him.

70. That the Plaintiff Peltomaa was conscious of the confinement, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

71. That the said seizure and unlawful detention occurred without authority of the law and without any legal basis or probable cause to believe that Plaintiff Peltomaa was in fact guilty of crimes or was in need of psychiatric care.

72. That by reason of the unlawful seizure, Plaintiff Peltomaa has been damaged as set forth above.

73. That the defendant NYPD is liable for the acts of the individually named Defendants under the doctrine of *respondeat superior*.

74. By reason of the foregoing, Plaintiff demands compensatory damages and punitive damages against all of the Defendants.

### THIRD CAUSE OF ACTION

### STATE LAW TORT MALICIOUS PROSECUTION

### AS TO PLAINTIFF LA FONT

75. Plaintiff LaFont hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

76. That the Plaintiff LaFont's rights have been violated pursuant to Article 1 Section 12 of the New York New York State Constitution to be free from unreasonable search and seizure.

77. That the said acts, were caused by the defendants and unidentified defendants without any legal justification.

78. That the said malicious prosecution was instigated by the defendants, their agents, servants and employees, without any legal justification to wit, without probable cause and based

upon the Defendant Giambra's knowingly false statement that Plaintiff LaFont committed the crimes of Obstruction of Government Administration and Harassment.

79. Defendant's false statements and false information caused the initiation of criminal proceedings against the Plaintiff.

80. That Plaintiff was arraigned on criminal charges and a criminal prosecution continued against her.

81. That the said initiation and continuation of criminal proceedings was instigated and caused by the defendants and by Defendant Giambra providing false information, without authority of the law and without any legal basis or probable cause to believe that Plaintiff Lafont was in fact guilty of crimes.

82. There was no information sufficient to support a reasonable belief that an offense had been committed.

83. The defendants' acts were shocking and were performed by the defendants with deliberate and reckless disregard for the truth and with malice.

84. In fact, the charges against Plaintiff LaFont were dismissed. The prosecution was terminated in Ms. LaFont's favor.

85. As a direct and proximate result of defendants' actions, Ms. LaFont was imprisoned and was only released upon the requirement that she return to court for each and every court appearance.

86. Plaintiff LaFont was prosecuted for nine months, was not free to travel freely, was required to return to court for each and every court appearance or a warrant would be issue for her arrest.

87.     That by reason of the malicious prosecution, Plaintiff LaFont has been damaged as set forth above.

88.     At the time and place of the occurrences herein described, the individually named Defendant officers were acting in the course and scope of their employment by the defendant NYPD.

89.     That the defendant NYPD is liable for the acts of the individually named Defendants under the doctrine of *respondeat superior*.

90.     By reason of the foregoing, Plaintiff demands compensatory damages and punitive damages against all of the Defendants.

## FOURTH CAUSE OF ACTION

### STATE LAW ASSAULT AND BATTERY

### AS TO PLAINTIFF PELTOMAA

91.     Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows.

92.     Upon information and belief, defendants did intentionally assault Plaintiff Peltomaa, placing him in fear of imminent danger and/or bodily harm, and subjected Plaintiff to great pain and physical injury by virtue of their conduct including, but not limited to, the unwarranted and unjustified assault and attack of Plaintiff Peltomaa.

93.     As a direct and proximate result of said acts, Defendants caused Plaintiff to suffer physical injuries and damages, as well emotional injuries and damages, which were foreseeable to the Defendants at the time of their acts, and which continue to date into the future.

94.     The aforesaid injuries did not result from any negligence or fault on the part of the Plaintiffs herein.

11

95.     Defendant City of New York is responsible for the acts and conduct of their officers and are liable for the damages flowing from their unlawful conduct.

96.     Plaintiffs additionally rely upon the doctrine of *res ipsa loquitur*.

97.     At the time and place of the occurrences herein described, the individually named Defendant officers were acting in the course and scope of their employment by the defendant NYPD.

98.     That the defendant NYPD are liable for the acts of the individually named Defendants under the doctrine of *respondeat superior*.

99.     By reason of the foregoing, Plaintiffs demands compensatory damages and punitive damages against all of the Defendants.

## FIFTH CAUSE OF ACTION

## NEGLIGENT SUPERVISION, TRAINING, HIRING AND RETENTION

## AS TO BOTH PLAINTIFFS

100.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

101.    At all times hereinafter mentioned and at the time of the occurrences herein and prior thereto, the Defendants, NYC, NYPD, and unidentified officers, owed a duty of care to Plaintiffs to use reasonable care in the hiring, training, supervision and retention of its employees, including the individually named Defendant officers.

102.    At all times hereinafter mentioned and at the time of the occurrences herein and prior thereto, the Defendants, NYC, NYPD, and unidentified officers owed a duty of care to Plaintiffs to use reasonable care in the hiring, training, supervision and retention of its employees, including the individually named Defendant officers, to ensure that they properly

12

performed their duties without unnecessarily arresting innocent people, such as the Plaintiff LaFont and without unnecessarily assaulting people, such as Plaintiff Peltomaa.

103.   Upon information and belief, the Defendants, NYC, NYPD, and unidentified officers, were negligent in hiring, training, retaining and supervising the individually named Defendant officers whom NYC, NYPD, and unidentified officers, knew, or in the exercise of due care, should have known, were unfit to perform their duties as police officers.

104.   NYC, NYPD, and unidentified officers, were negligent in hiring, training, retaining and supervising the individually named defendant officers whom NYC, NYPD, and unidentified officers, knew, or in the exercise of due care, should have known, were unfit to follow and carry out decision making skills, police protocols, procedures, and/or tactics.

105.   NYC, NYPD, and unidentified officers, were negligent in training and supervising the individually named Defendant officers in proper police procedures.

106.   NYC, NYPD, and unidentified officers, were negligent in failing to exercise proper supervision; in negligently hiring, training, retaining and otherwise supervising the individually named Defendant officers whom NYC and NYPD knew, or in the exercise of due care, should have known, did not have the proper comportment and judgment to carry out and perform their duties as police officers.

107.   NYC, NYPD, and unidentified officers, were negligent in failing to exercise proper supervision; in negligently hiring, training, retaining and otherwise supervising the individually named Defendant officers whom NYC, NYPD, and unidentified officers, knew, or in the exercise of due care, should have known, did not have the proper comportment and judgment to follow, exercise, and employ proper police procedures and protocol.

108.    Upon information and belief, the Defendants, NYC, NYPD, and unidentified officers, were negligent in failing to have, use and enforce proper protocols and procedures to uncover, investigate, discharge, suspend or otherwise discipline employees including the individually named Defendant officers.

109.    Defendants NYC, NYPD, and unidentified officers, including the individually named Defendant officers would confront said issues/encounters/situations in their work.

110.    Defendants NYC, NYPD, and unidentified officers, knew that individual officers, including the individually named Defendant officers, would confront said issues/encounters/situations in their work, and that, without training, would fail to employ proper police protocols and procedures.

111.    Defendants NYC, NYPD, and unidentified officers, knew that individual officers, would confront said issues/encounters/situations in their work, and that, without the proper comportment, and/or judgment, and/or decision making skills would fail to employ proper police protocols and procedures.

112.    Defendants NYC, NYPD, and unidentified officers, were negligent, careless, reckless and deliberately indifferent in training and supervising, as and for its employees, including the individually named Defendant officers, in that the said Defendants would confront said issues/encounters/situations in their work and that, without proper training and supervision, would make wrong and incorrect decisions regarding the arrest and treatment of individuals.

113.    The negligence and negligent acts of the Defendants were the proximate cause of Plaintiffs' injuries.

114.    Plaintiffs additionally rely upon the doctrine of *res ipsa loquitur*.

14

115. At the time and place of the occurrences herein described, the individually named Defendant officers, were acting in the course and scope of their employment by the defendant NYPD.

116. That the defendant NYPD is liable for the acts of the individually named Defendants under the doctrine of *respondeat superior*.

117. By reason of the foregoing, Plaintiffs demand compensatory damages and punitive damages against all of the Defendants.

## SIXTH CAUSE OF ACTION

### FEDERAL FALSE ARREST CLAIM

### AS TO PLAINTIFF LAFONT

118. Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows.

119. That the Plaintiff LaFont's rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, in that Plaintiff was illegally seized.

120. That the said acts, were caused by the defendants and unidentified defendants without any legal justification.

121. That the defendants caused the confinement of Plaintiff, that the defendants intended to confine Plaintiff, that Plaintiff was conscious of the confinement, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

122. That the said seizure and unlawful detention was caused by the defendants acting without authority of the law and without any legal basis or probable cause to believe that Plaintiff was in fact guilty of crimes.

123. That by reason of the unlawful seizure, the Plaintiff incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, and embarrassment, and she was otherwise injured.

124. That by reason of the aforesaid, the Plaintiff has been damaged in an amount to be determined at trial and an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

### SEVENTH CAUSE OF ACTION

### FEDERAL FALSE ARREST CLAIM

### AS TO PLAINTIFF PELTOMAA

125. Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows.

126. That the Plaintiff Peltomaa's rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, in that Plaintiff was illegally seized.

127. That the said acts, were caused by the defendants and unidentified defendants without any legal justification.

128. That the defendants caused the confinement of Plaintiff, that the defendants intended to confine Plaintiff, that Plaintiff was conscious of the confinement, Plaintiff did not consent to the confinement and the confinement was not otherwise privileged.

129. That the said seizure and unlawful detention was caused by the defendants acting without authority of the law and without any legal basis or probable cause to believe that Plaintiff was in fact guilty of crimes.

130.   That by reason of the unlawful seizure, the Plaintiff incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, and embarrassment, and he was otherwise injured.

131.   That by reason of the aforesaid, the Plaintiff has been damaged in an amount to be determined at trial and an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

## EIGHTH CAUSE OF ACTION

### FEDERAL MALICIOUS PROSECUTION CLAIM

### AS TO PLAINTIFF LAFONT

132.   Plaintiff LaFont hereby incorporates by reference all of the foregoing paragraphs and further alleges as follows.

133.   That the Plaintiff LaFont's rights have been violated pursuant to the United States Constitution.

134.   That the said acts, were caused by the defendants and Unidentified defendants without any legal justification.

135.   That the said malicious prosecution was instigated by the defendants, their agents, servants and employees, without any legal justification to wit, without probable cause and based upon the Defendant Giambra's knowingly false statement that Plaintiff LaFont committed the crimes of Obstruction of Government Administration and Harassment.

136.   Defendant's false statements and false information caused the initiation of criminal proceedings against the Plaintiff.

137.   That Plaintiff was arraigned on criminal charges and a criminal prosecution continued against her.

138.    That the said initiation and continuation of criminal proceedings was instigated and caused by the defendants and by Defendant Giambra providing false information, without authority of the law and without any legal basis or probable cause to believe that Plaintiff Lafont was in fact guilty of crimes.

139.    There was no information sufficient to support a reasonable belief that an offense had been committed.

140.    The defendants' acts were shocking and were performed by the defendants with deliberate and reckless disregard for the truth and with malice.

141.    In fact, the charges against Plaintiff LaFont were dismissed. The prosecution was terminated in Ms. LaFont's favor.

142.    As a direct and proximate result of defendants' actions, Ms. LaFont was imprisoned and was only released upon the requirement that she return to court for each and every court appearance.

143.    Plaintiff LaFont was prosecuted for nine months, was not free to travel freely, was required to return to court for each and every court appearance or a warrant would be issue for her arrest.

144.    That by reason of this malicious, Plaintiff incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, embarrassment, and she was otherwise injured.

145.    That by reason of the aforesaid, the Plaintiff has each been damaged in a sum to be determined by a jury and an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

18

## NINTH CAUSE OF ACTION

### FEDERAL EXCESSIVE FORCE CLAIM

### AS TO PLAINTIFF PELTOMAA

146.    Plaintiffs hereby incorporate by reference all of the foregoing paragraphs and further alleges as follows.

147.    That the Plaintiffs' rights have been violated under the Fourth Amendment of the United States Constitution pursuant to 42 U.S.C. § 1983, in that defendants pushed and kicked Plaintiff, kicked his legs out from under him causing him to fall face first on his chin, and dragged him while wearing handcuffs.

148.    It is clearly established that at the time of this assault, the defendants had fair warning that pushing, throwing down, and assaulting plaintiff was unconstitutional.

149.    That by reason of this assault, Plaintiff incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, embarrassment, and he was otherwise injured.

150.    That by reason of the aforesaid, the Plaintiff has been damaged in a sum to be determined by a jury and an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

## TENTH CAUSE OF ACTION

### SUPERVISOR LIABILITY

### AS TO BOTH PLAINTIFFS

151.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

19

152.    That the plaintiffs' rights have been violated under the Fourth and Fourteenth Amendments to the United States Constitution by the defendants who were supervisors of the officers who violated and abused plaintiffs' rights.

153.    That these defendants, who were supervisors had actual and constructive knowledge of the illegal seizure, false arrest, assault and various torts which were being committed by their subordinates against the plaintiffs.

154.    That the defendant supervisors did cause the plaintiffs' harms by failing to remedy the patterns of false arrest, and assaults and other constitutional violations the defendants committed after learning of them.

155.    That by reason of the failure of the unidentified supervisors, plaintiffs were forced to undergo an unlawful seizure, assault, detention and plaintiffs incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, and embarrassment, and they were otherwise injured.

156.    That by reason of the aforesaid, the plaintiffs have been damaged in a sum to be determined at trial an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

## ELEVENTH CAUSE OF ACTION

### MONELL CLAIM

### AS TO BOTH PLAINTIFFS

157.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

158.    That the plaintiffs' rights have been violated under the Fourth and Fourteenth Amendments to the United States Constitution by the defendant City of New York (NYC).

20

159.    Defendant NYC has a policy and practice of permitting its officers to act with a callous, reckless and deliberate indifference to plaintiffs who are in need of serious medical assistance and who are undergoing some type of medical emergency – the policy and practice is to label such individuals as Emotionally Disturbed Persons, handcuff and take them into custody, and handle them with violence as opposed to remaining calm and assisting individuals to obtain medical treatment, and treating them humanely.

160.    Plaintiff Peltomaa was such an individual.  When Plaintiff LaFont was trying to explain to the police that her husband was in need of medical attention and was having a bad reaction to his medication, the police responded by throwing him to the ground, assaulting him, handcuffing him, and then dragging him out of his building when he had just undergone open heart surgery two days prior to this incident.

161.    Defendant NYC has failed to adequately discipline, train, supervise or otherwise direct police officers concerning the rights of citizens, the proper criteria to properly conduct an investigation and to handle individuals in medical need and undergoing a medical crisis.

162.    That NYC has failed to train the defendants and insure that defendants understand proper comportment, are capable of maintaining appropriate control of their tempers, and are capable of behaving appropriately and properly when carrying a weapon and wielding the force of law enforcement authority.

163.    That the policy of allowing officers to treat medical emergencies by using force and aggression caused the unlawful seizure, assault, and detention and plaintiffs incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, and embarrassment, and they were otherwise injured.

21

164.    That by reason of the aforesaid, the plaintiffs have been damaged in a sum to be determined by a jury and an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

## TWELFTH CAUSE OF ACTION

### FAILURE IN THEIR AFFIRMATIVE DUTY TO INTERVENE

### AS TO BOTH PLAINTIFFS

165.    Plaintiffs repeat, reiterate and reallege each and every allegation contained in the prior paragraphs with the same force and effect as if more fully and at length set forth herein.

166.    That the plaintiffs' rights have been violated under the Fourth and Fourteenth Amendments to the United States Constitution by the individual defendants.

167.    That there exists a duty for defendant police officers to intervene to prevent the preventable violation of civil rights taking place in their presence when there is a reasonable opportunity to do so.

168.    That such opportunity existed for the defendants in the instant case.

169.    That the defendants, by failing in their affirmative duty to intervene are responsible for the violations of the plaintiffs' Fourth and Fourteenth Amendment rights.

170.    That by reason of the unlawful seizure, assault, detention and destruction of her property and invasion of her privacy the plaintiff incurred physical, emotional and pecuniary harms, suffered humiliation, mental anguish, and embarrassment, and they were otherwise injured.

171.    That by reason of the aforesaid, the plaintiffs have been damaged in a sum to be determined by a jury and an award of attorney's fees is appropriate pursuant to 42 U.S.C. §1988.

**WHEREFORE**, Plaintiffs pray for relief as follows:

A.   That the Court award compensatory damages to Plaintiffs and against the defendants jointly and severally, in an amount to be determined at trial;

B.   That the Court award punitive damages to Plaintiffs, and against all defendants, in an amount, to be determined at trial, that will deter such conduct by defendants in the future;

C.   For a trial by jury;

D.   For a pre-judgment and post-judgment interest and recovery of their costs; and

E.   For any and all other relief to which they may be entitled.

Dated: June 17, 2014
       Garden City, New York

BARKET MARION EPSTEIN & KEARON, LLP

By:   _____
      Amy Marion, Esq.
      Attorneys for Plaintiff
      666 Old County Road-Suite 700
      Garden City, N.Y.  11530
      (516) 745-1500

23